[Cite as *Whitehall v. Olander*, 2014-Ohio-4066.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| City of Whitehall et al., | : | |
| Plaintiffs-Appellees, | : | |
| v. | : | No. 14AP-6 |
| | | (M.C. No. 2007EVH-60217) |
| Thomas J. Olander et al., | : | |
| Defendants-Appellees, | : | (REGULAR CALENDAR) |
| [WC Management, LLC, | : | |
| Appellant]. | : | |

D E C I S I O N

Rendered on September 18, 2014

*Eastman & Smith, Ltd., Joseph R. Durham* and *René L. Rimelspach*, for appellees City of Whitehall and Franklin County Board of Health.

*Peterson, Conners, Fergus & Peer, LLP, Jerry E. Peer* and *Istvan Gajary*, for appellant.

APPEAL from the Franklin County Municipal Court

O'GRADY, J.

{¶ 1} Appellant, WC Management, LLC ("WCM"), appeals from a judgment of the Franklin County Municipal Court denying its motion to intervene in an action plaintiffs-appellees the City of Whitehall ("Whitehall") and Franklin County District Board of Health (collectively, "appellees") brought against Thomas Olander and the Woodcliff Condominium Unit Owners' Association ("WCUOA"). For the reasons that follow, we affirm.

## I.  FACTS AND PROCEDURAL BACKGROUND

{¶ 2}   This case involves the Woodcliff Condominiums complex ("Woodcliff") in Whitehall.  Although this litigation has an extensive history, our decision will focus on matters pertinent to the present appeal.

{¶ 3}  In July 2007, appellees filed suit against Olander and WCUOA.  The complaint alleged Olander and WCUOA owned the majority of the units at Woodcliff, and Olander controlled WCUOA.   Among other things, appellees claimed Woodcliff constituted a public nuisance subject to abatement under R.C. 3767.41 and local ordinances.  Appellees sought a court order permanently enjoining Olander and WCUOA from maintaining the nuisance.[1]

{¶ 4}   On February 4, 2008, the trial court issued an agreed permanent injunction. The parties stipulated Olander and/or WCUOA owned over 200 of the 317 units at Woodcliff.  They also stipulated that Woodcliff constituted a public nuisance subject to abatement under R.C. 3767.41 and/or local ordinances.[2]  Olander agreed to release his control over WCUOA, and the parties agreed to have the trial court appoint a receiver. The trial court later appointed The Robert Weiler Company as receiver.  In an April 7, 2008 agreed order, the trial court outlined some of the receiver's duties with regard to Olander's units and management of WCUOA.  The order stated a number of banks, including Union Savings Bank ("Union Savings") and Perpetual Federal Savings Bank ("Perpetual") held mortgage interests on Olander's units.  In August 2008, WCM filed a "notice of substitution and appearance of counsel" stating it had been "substituted for Perpetual * * * in this action."  (R. 51.)  WCM claimed it had obtained the mortgage interests of Perpetual in Woodcliff by assignment.  Evidently, in addition to its acquisition of a mortgage interest in several of Olander's units, during the course of proceedings WCM also purchased a number of other units Olander owned.

{¶ 5} The Robert Weiler Company had difficulties remedying the nuisance because WCUOA was underfunded.  The Robert Weiler Company filed a motion seeking to withdraw as receiver and have WCM appointed to the position.  The trial court granted

[1] For ease of discussion, we will refer to the action filed by appellees as the "nuisance action."
[2] The trial court later clarified that only properties owned by Olander or under control of WCUOA at the time the complaint was filed had been declared a nuisance and were subject to the trial court's jurisdiction.

the motion in February 2009.  As receiver, WCM took various steps in an effort to abate the nuisance.  For instance, WCM requested and received a court order permitting unit owners at Woodcliff to abate nuisance conditions for a credit against future assessments. Additionally, WCM claimed to have loaned over $50,000 to WCUOA.

{¶ 6}  In July 2009, Union Savings filed a "cross-claim" for foreclosure ("foreclosure claim") of certain property, presumably located in Woodcliff.  Union Savings alleged it was a party to the nuisance action by virtue of the April 7, 2008 agreed order.  In its foreclosure claim, Union Savings stated WCM "may claim an interest in the premises by virtue of its appointment as Receiver in this action and of its Oath of Receiver."  (R. 85, 3.)  In August 2009, WCM filed an answer to the claim.  Later, with leave of court, Union Savings filed an amended claim which added Foundation Bank as a defendant in the foreclosure action.  Union Savings filed a motion for default judgment against Foundation Bank, WCM, and others based on their failure to respond to the amended  foreclosure claim, and the trial court issued a judgment decree in foreclosure.

{¶ 7}  In June 2011, the trial court issued an order establishing a plan to shift control of WCUOA from the receiver to the members of WCUOA and continue abatement of the nuisance conditions.  Later, appellees complained that the receiver and WCUOA had not complied with the trial court's order, and appellees sought demolition of units at Woodcliff.  WCM filed a memorandum contra to the demolition request.  At a hearing on June 19, 2012, WCM asked to resign as receiver.  On June 25, 2012, the trial court granted the request and appointed Mark Froehlich as the new receiver.  The same day, the trial court conducted a hearing on the demolition motion.

{¶ 8}  In November 2012, the trial court issued an agreed order staying issuance of a decision on the motion for demolition.  WCM agreed, among other things, to abate nuisance conditions and remediate all existing code violations in units it owned in compliance with a schedule.  The order gave WCM authority to sell, lease or rent any unit if appellees declared the unit habitable and issued a certificate of occupancy or WCM obtained an affidavit from a prospective purchaser who agreed the transferred unit(s) would be subject to the trial court's jurisdiction until the receiver was removed or the unit(s) were removed from the receivership.  Appellees later complained numerous conditions of the agreed order had not been satisfied.

{¶ 9}   On July 25, 2013, the trial court conducted a status conference at which it referred to WCM as a statutorily-defined "interested part[y]." (Tr. 4.)  At the conference, appellees asked for a stay of WCM's schedule in the November 2012 agreed order and a stay of Whitehall's inspection schedule.  Appellees wanted to explore the possibility of Woodcliff obtaining funding through Franklin County's land bank.  The receiver agreed the "land bank issue is something that we should take a look at" as it "potentially could benefit all the unit owners." (Tr. 13.)  WCM objected to any stay.

{¶ 10} Subsequently, over WCM's objection, the trial court stayed the November 2012 agreed order as it related to WCM's abatement schedule and stayed Whitehall's inspection schedule.  The trial court stated "[d]uring the term of the stay, the City may, but shall not be required to, issue any certificate of occupancy to any unit owned by [WCM]." (R. 299, 4.)  However, pursuant to the November 2012 agreed order, interested parties could still sell, lease or rent units by submitting an agreed order and affidavit from a prospective purchaser.  The trial court also gave the receiver authority to negotiate the terms of a mortgage with the land bank and present those terms to the trial court for approval.

{¶ 11} On August 12, 2013, WCM filed a motion to "intervene as [a] party-defendant" claiming it owned 119 Woodcliff units and had, by virtue of assignments, a first mortgage interest in other units.  WCM requested intervention to "protect its interests as a mortgagee and title owner." (R. 302, 2.)  Appellees and Froehlich opposed the motion.

{¶ 12} In a reply memorandum, WCM argued as an interested party, under Civ.R. 19(A) and 20(A), it had an absolute and irrefutable right to be a party-defendant in the nuisance action.  WCM claimed it had the right to intervene because appellees sought demolition of units in which WCM had an interest.  Also, WCM complained the receiver was attempting to obtain a mortgage that would potentially have priority over the mortgages of WCM.  In addition, WCM claimed Whitehall and the receiver had submitted agreed orders to the court without giving interested parties notice or an opportunity to be heard on the issues contained in those orders.  WCM suggested that, pursuant to an agreed order, Whitehall had interfered with WCM's ability to improve units because

Whitehall would not issue permits or certificates of occupancy.  WCM also claimed it was a party-defendant in the nuisance action by virtue of Union Savings' foreclosure claim.

{¶ 13} After WCM filed its initial motion to intervene, it obtained authorization to sell 73 of the units it owned utilizing the affidavit method provided for in the November 2012 entry.

{¶ 14} The trial court denied WCM's motion to intervene.  The trial court found Civ.R. 19 and 20 did not apply to a motion to intervene and instead considered WCM's motion under Civ.R. 24(A)(2).  The trial court determined WCM failed to comply with the procedural requirements for intervention by not attaching a pleading to the motion to intervene setting forth the claim or defense for which intervention was sought.  The trial court also found WCM's motion to intervene was untimely given the amount of time that passed between WCM becoming an interested party and filing the motion.  The trial court agreed WCM had a legally protectable interest in property that was the subject matter of the nuisance action.  However, WCM failed to show its ability to protect those interests may be impaired or impeded unless it was allowed to intervene.  The trial court found WCM's interest in the common areas of Woodcliff were adequately represented by the receiver.  Also, Union Savings was not a party to the nuisance action, so its foreclosure claim could not make WCM a party-defendant in the nuisance action.

## II.  ASSIGNMENTS OF ERROR

{¶ 15} WCM appeals and assigns the following three assignments of error for our review:

> I. THE TRIAL COURT ERRED IN FAILING TO RECOGNIZE APPELLANT AS A PARTY-DEFENDANT.
>
> II. THE TRIAL COURT ERRED IN FAILING TO CONSIDER APPELLANT'S JOINDER ARGUMENTS UNDER CIV.R. 19(A) AND 20(A).
>
> III. THE TRIAL COURT ERRED IN DENYING APPELLANT'S INTERVENTION ARGUMENTS UNDER CIV.R. 24(A).

## III.  DISCUSSION

### A.  Re-classification of WCM

{¶ 16} In its first assignment of error, WCM contends the trial court erred in failing to recognize it as a party-defendant.  WCM appears to claim the trial court classified it as a party-defendant during the course of the proceedings and could not later re-classify it as an interested party at the July 25, 2013 status conference.  An interested party in a R.C. 3767.41 public nuisance action is "any owner, mortgagee, lienholder, tenant, or person that possesses an interest of record in any property that becomes subject to the jurisdiction of a court pursuant to this section, and any applicant for the appointment of a receiver pursuant to this section."  R.C. 3767.41(A)(4).  Interested parties are entitled to a number of rights, including "notice of the date and time of a hearing on the complaint" and the opportunity under certain circumstances to abate a nuisance themselves.  R.C. 3767.41(B)(2)(a) & (C)(2).  Through its ownership and possession of mortgage interests at Woodcliff, WCM qualifies as an interested party.  However, WCM maintains the rights given to interested parties under R.C. 3767.41 are insufficient to protect its interests, and WCM must be a party-defendant to fully protect its interests.

{¶ 17} WCM argues several court documents demonstrate the trial court's previous recognition of it as a party-defendant, such as WCM's answer to Union Savings' foreclosure claim.  WCM also points to the entry granting Union Savings leave to amend its claim to add Foundation Bank as a defendant and WCM's amended claim which named Foundation Bank as a party.  WCM asserts it was the assignee of Foundation Bank's rights to properties in Woodcliff and suggests that by virtue of this assignment, WCM became a party to the foreclosure claim and, thus, the nuisance action.  In addition, WCM claims in an October 3, 2012 entry, the trial court recognized WCM "as a defendant and not an interested party."  (Appellant's Brief, 11.)  Then, without citation to any legal authority, WCM contends because it had "already been recognized" as a party-defendant by the trial court, it is "entitled to the full panoply of rights that status offers." (Appellant's Brief, 12.)

{¶ 18} Initially, we fail to see how Union Savings' foreclosure claim and WCM's corresponding answer could have conferred on WCM, in its individual capacity, party-defendant status in the nuisance action.  Union Savings' foreclosure claim only made

allegations against WCM in its capacity as receiver. Also, despite WCM's claim regarding an assignment of rights from Foundation Bank, WCM directs our attention to nothing in the record indicating WCM was actually substituted as a party in the foreclosure action in place of Foundation Bank. *See* Civ.R. 25(C) ("In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.").

{¶ 19} Additionally, appellees' complaint only named Olander and WCUOA as defendants—not Union Savings, Foundation Bank or WCM. In its foreclosure claim, Union Savings asserted it became a party to the nuisance action by virtue of the April 7, 2008 agreed order. However, as the trial court pointed out, the April 2008 order merely identified Union Savings as one of several banks with mortgage interests in Olander's properties at Woodcliff. Union Savings was not a party-defendant in the nuisance action; it was only an interested party under R.C. 3767.41(A)(4).

{¶ 20} Civ.R. 13(G) states: "A pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action." Because Union Savings was not a party to the nuisance action, it could not file, in essence, a "cross-claim" and thereby make Foundation Bank or WCM a party-defendant in the nuisance action. Likewise, the fact that the trial court granted Union Savings leave to add Foundation Bank as a defendant in the improperly styled "cross-claim" did not somehow confer on Foundation Bank or WCM party-defendant status in the nuisance action.[3]

{¶ 21} Additionally, the trial court's October 3, 2012 entry did not make WCM a party-defendant in the nuisance action. The entry grants a defense motion for a continuance. Even if the entry somehow conferred on WCM party-defendant status, WCM's suggestion that a trial court cannot alter its own prior, interlocutory orders, lacks merit. "Interlocutory orders are subject to change or revision by the trial court any time prior to the issuance of a final judgment." *Gahanna v. Cameron*, 10th Dist. No. 02AP-

---

[3] We make no ruling on the validity of the judgment decree in foreclosure on Union Savings' amended foreclosure claim as that issue is not before us in the present appeal.

255, 2002-Ohio-6959, ¶ 38, citing *Noble v. Colwell*, 44 Ohio St.3d 92, 96 (1989); *see also* Civ.R. 21 (allowing courts to sua sponte drop parties from an action "at any stage of the action and on such terms as are just").

{¶ 22} Next, WCM claims it has a substantial financial interest in Woodcliff, and the trial court's failure to recognize WCM as a party-defendant somehow jeopardizes its ability to protect those interests. WCM also argues that because appellees named Olander as a defendant and WCM has acquired ownership of several of Olander's properties, WCM could "step into" Olander's shoes and "effectively replace him as a party-defendant." (Appellant's Brief, 10.) However, WCM cites no legal authority for these arguments and makes no effort to connect them to any of the civil rules on which it premised the motion to intervene. " 'An appellant bears the burden of affirmatively demonstrating error on appeal. * * * It is not the duty of this court to construct legal arguments in support of an appellant's appeal.' " *State v. Hubbard*, 10th Dist. No. 11AP-945, 2013-Ohio-2735, ¶ 34, quoting *Camp v. Star Leasing Co.*, 10th Dist. No. 11AP-977, 2012-Ohio-3650, ¶ 67.

{¶ 23} Accordingly, we overrule the first assignment of error.

## B. Civ.R. 19(A) and 20(A)

{¶ 24}   In its second assignment of error, WCM contends in ruling on its motion to intervene, the trial court erred in failing to consider its joinder arguments under Civ.R. 19(A) and 20(A). WCM titled its motion as one to "intervene as [a] party-defendant" and cited no legal authority in the motion. (R. 302). In WCM's reply memorandum, it cited Civ.R. 19(A) and 20(A). However, the trial court found Civ.R. 19 and 20 were "inapposite to the motion to intervene" because Civ.R. 24 governed intervention. (R. 319, 2.) WCM contends the trial court "improperly overlooked or failed to consider its [Civ.R. 19(A) and 20(A)] joinder claims." (Appellant's Brief, 14.)

{¶ 25} Civ.R. 19(A) discusses joinder of persons needed for just adjudication and provides:

> A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (a) as a practical matter impair or impede his ability to protect that interest or (b) leave any of the persons already parties

subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest, or (3) he has an interest relating to the subject of the action as an assignor, assignee, subrogor, or subrogee. If he has not been so joined, the court shall order that he be made a party upon timely assertion of the defense of failure to join a party as provided in Rule 12(B)(7). If the defense is not timely asserted, waiver is applicable as provided in Rule 12(G) and (H). If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. In the event that such joinder causes the relief sought to exceed the jurisdiction of the court, the court shall certify the proceedings in the action to the court of common pleas.

{¶ 26} Civ.R. 20(A) deals with permissive joinder of parties and states:

All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or succession or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action. All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or succession or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.

{¶ 27} As the trial court found, WCM filed a motion to intervene, and Civ.R. 24 governs intervention. Civ.R. 24(A) discusses intervention of right and states that "[u]pon timely application anyone shall be permitted to intervene in an action" under certain circumstances. Civ.R. 24(C) provides: "A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Civ.R. 5. The motion and any supporting memorandum shall state the grounds for intervention and shall be accompanied by a pleading, as defined in Civ.R. 7(A), setting forth the claim or defense for which intervention is sought." Thus, Civ.R. 24 allows a non-party to file a motion to

intervene and contains specific requirements for such a motion. *See Chase Bank USA, N.A. v. Jacobs*, 10th Dist. No. 11AP-343, 2012-Ohio-64, ¶ 7 (stating a non-party may file a motion to intervene pursuant to Civ.R. 24); 1970 Staff Note, Civ.R. 24 ("Intervention under Rule 24 'rounds out' joinder of parties theories of the rules of procedure. Thus, a potential party who is not a party to the action may, under certain circumstances and by his own initiative, intervene in the action as a party.").

{¶ 28} WCM directs this court to no authority for the proposition that a non-party can seek to inject itself into an action by filing a motion under Civ.R. 19(A) or 20(A) and circumvent the requirements of Civ.R. 24. Civ.R. 19(A) contemplates joinder of persons needed for just adjudication by the parties through their pleadings or after a defendant's timely assertion of a Civ.R. 12(B)(7) defense; Civ.R. 20(A) contemplates permissive joinder through pleadings. *See* Civ.R. 13(H) ("Persons other than those made parties to the original action may be made parties to a counterclaim or cross-claim in accordance with the provisions of Rule 19, Rule 19.1, and Rule 20."); 1970 Staff Note, Civ.R. 20 ("Joinder of parties under Rule 20(A) occurs at the pleading stage.").

{¶ 29} Additionally, although not raised by WCM, we note Civ.R. 21, which discusses misjoinder and nonjoinder of parties, provides: "Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." Civ.R. 21 is a " 'mechanism for correcting either the misjoinder or nonjoinder of parties under [Civ.R.] 19, 19.1, and 20.' " *EnQuip Technologies Group, Inc. v. Tycon Technoglass, S.R.L.*, 2d Dist. No. 2009 CA 42, 2010-Ohio-28, ¶ 33, quoting Fink, Greenbaum, & Wilson, *Guide to the Ohio Rules of Civil Procedure*, Section 21:2 (2006 Ed.) and 1970 Staff Note, Civ.R. 21 (stating Civ.R. 21 must be read in conjunction with Civ.R. 20); *see Darby v. A-Best Prods. Co.*, 102 Ohio St.3d 410, 2004-Ohio-3720, ¶ 10 (stating Civ.R. 21 "expressly governs initial nonjoinder and subsequent addition of parties"); *Bill Gates Custom Towing, Inc. v. Branch Motor Express Co.,* 1 Ohio App.3d 149, 150 (10th Dist.1981) (indicating the purpose of Civ.R. 21 is to permit the bringing in of a party who, through inadvertence, mistake or for some other reason, had not been made a party originally and whose presence is necessary or desirable). Civ.R. 21 only permits addition of parties on the motion of a party or on the

trial court's own initiative; the rule does not permit the addition of parties on the motion of a non-party.

{¶ 30} Because WCM failed to direct us to any legal authority that indicates a non-party can intervene in an action on its own initiative under Civ.R. 19(A) or 20(A), we find no error in the trial court's decision to analyze WCM's motion to intervene only under Civ.R. 24, the rule that specifically addresses intervention by non-parties. This decision renders moot WCM's assertions regarding the merits of its Civ.R. 19(A) and 20(A) arguments.

{¶ 31} For the foregoing reasons, we overrule the second assignment of error.

## C. Civ.R. 24(A)

{¶ 32} Under its third assignment of error, WCM contends the trial court erred in denying WCM's motion to intervene under Civ.R. 24(A)(2), which provides:

> Upon timely application anyone shall be permitted to intervene in an action: * * * (2) when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

{¶ 33} Additionally, as noted above, Civ.R. 24(C) requires that a motion to intervene and any supporting memorandum state the grounds for intervention and be accompanied by a pleading as defined in Civ.R. 7(A) setting forth the claim or defense for which intervention is sought. Civ.R. 7(A) states:

> There shall be a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Civ.R. 14; and a third-party answer, if a third-party complaint is served. No other pleading shall be allowed, except that the court may order a reply to an answer or a third-party answer.

{¶ 34} We review a trial court's denial of a motion to intervene for an abuse of discretion. *State ex rel. Merrill v. Ohio Dept. of Natural Resources*, 130 Ohio St.3d 30, 2011-Ohio-4612, ¶ 41, citing *State ex rel. First New Shiloh Baptist Church v. Meagher*, 82

Ohio St.3d 501, 503 (1998), fn. 1, and *Rumpke Sanitary Landfill, Inc. v. State*, 128 Ohio St.3d 41, 2010-Ohio-6037, ¶ 22; *State ex rel. Montgomery v. Columbus*, 10th Dist. No. 02AP-963, 2003-Ohio-2658, ¶ 14. The phrase abuse of discretion connotes an attitude on the part of the trial court that is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). We must construe Civ.R. 24 liberally to permit intervention. *Merrill* at ¶ 41, citing *State ex rel. SuperAmerica Group v. Licking Cty. Bd. of Elections*, 80 Ohio St.3d 182, 184 (1997).

{¶ 35} The trial court denied the motion to intervene for multiple reasons. First, the motion was not accompanied by a pleading as required by Civ.R. 24(C). As the trial court pointed out, denial of the motion to intervene is warranted on the basis of a failure to comply with the pleading requirement alone. *See State ex rel. Sawicki v. Court of Common Pleas of Lucas Cty.*, 121 Ohio St.3d 507, 2009-Ohio-1523, ¶ 21-22. WCM contends it did not attach a pleading to its motion to intervene because it already filed a pleading on August 20, 2009, i.e., its answer to Union Savings' original foreclosure claim. As we already explained, the "cross-claim" was improperly styled and did not make WCM a party to the nuisance action. Moreover, Civ.R. 24(C) requires that a motion to intervene be "accompanied" by a pleading. We fail to see how WCM's filing of an answer to Union Savings' original foreclosure claim almost four years before filing the motion to intervene satisfies this requirement, particularly when neither the motion to intervene nor WCM's reply memorandum reference this answer. In addition, WCM's answer does not specify a "claim or defense for which intervention is sought." Civ.R. 24(C).

{¶ 36} The trial court also found WCM's motion to intervene was untimely. "The timeliness of a motion to intervene pursuant to Civ.R. 24(A) is a matter within the sound discretion of the trial judge, and the trial court's decision will be reversed only upon a showing of an abuse of that discretion." *Univ. Hosps. of Cleveland, Inc. v. Lynch*, 96 Ohio St.3d 118, 2002-Ohio-3748, ¶ 47, citing *Meagher* at 503. Whether a motion to intervene is timely depends on the facts and circumstances of the case. *Meagher* at 503. According to the Supreme Court of Ohio:

> In determining the timeliness of a motion to intervene pursuant to Civ.R. 24, a court should consider the following factors: (1) the point to which the suit has progressed, (2) the purpose for which intervention is sought, (3) the length of

> time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case, (4) the prejudice to the original parties due to the proposed intervenor's failure after he or she knew or reasonably should have known of his or her interest in the case to apply promptly for intervention, and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Univ. Hosps. of Cleveland, Inc.* at ¶ 48, citing *Meagher* at 503.

{¶ 37} WCM contends its motion to intervene was timely because it long considered itself a party-defendant. WCM argues its status was not questioned prior to the July 25, 2013 status conference, and, after that conference, WCM promptly filed its motion to intervene. However, as we already explained, WCM was never a party-defendant in the nuisance action. WCM could have ascertained its status as an interested party at any time through a review of the record. Therefore, WCM's objection to the trial court's untimeliness finding lacks merit.

{¶ 38} In addition, the trial court found WCM failed to show it was so situated that the disposition of the nuisance action may, as a practical matter, impair or impede WCM's ability to protect its interests. The trial court found WCM could protect its interests as an owner at Woodcliff through procedures established in the November 2012 agreed entry. Specifically, WCM could sell, lease or rent units under certain circumstances. The trial court noted WCM had successfully availed itself of these procedures twice, and, since filing the motion to intervene, had sold 73 of the 119 units it owned. The trial court also noted WCM had a contract with a purchaser that contemplated the eventual purchase of all units owned by WCM. Thus, WCM had been demonstrably able to protect its ownership interest as an interested party and failed to explain how being a party-defendant would put it in a better position to protect that interest.

{¶ 39} WCM contends the trial court ignored the fact that the July 26, 2013 entry superseded the November 2012 agreed entry. WCM argues the July 26, 2013 entry is indicative of a practice of agreed orders being submitted to the trial court without WCM having notice or an opportunity to be heard regarding issues in those orders. WCM claims the July 26, 2013 entry was supposed to summarize what occurred at the July 25, 2013 status conference. However, the entry contains language not discussed at the status

conference, namely language stating Whitehall, during the course of a stay, was not required to issue certificates of occupancy for certain WCM-owned units. According to WCM, Whitehall has refused to issue certificates of occupancy and permits to WCM even though several of its units are ready to rent. Thus, WCM complains the July 26, 2013 entry substantially impairs its ability to repair, rehabilitate, and rent its units.

{¶ 40} Although WCM suggests multiple orders have been issued without its participation, WCM directs this court's attention to only one such purported order, the July 26, 2013 entry. However, the July 26, 2013 entry was not an agreed order and specifically notes WCM's objection to the entry. Moreover, at the July 25, 2013 status conference, appellees proposed a stay on WCM's abatement schedule and Whitehall's inspection schedule, and WCM had an opportunity to and did voice its objection to that proposal at the conference. Although the language in the July 26, 2013 entry regarding certificates of occupancy was not explicitly discussed at the hearing, it is logical that Whitehall would not be required to issue certificates of occupancy for units while its inspection schedule was stayed.

{¶ 41} The fact that the trial court issued the July 26, 2013 entry over WCM's objection does not prove WCM is so situated as an interested party that the disposition of the nuisance action may impair or impede its ability to protect its interests. Even if WCM was a party-defendant, the trial court could have issued the July 26, 2013 entry over its objection. Additionally, we note WCM points to no evidentiary support for its claims that Whitehall has refused to issue certificates of occupancy or permits to which WCM would otherwise be entitled. Nor does WCM address the trial court's finding that WCM's ability to protect its interests is demonstrated by its successful utilization of procedures in the November 2012 agreed entry to sell 73 of the 119 units it owned.

{¶ 42} Next, regarding WCM's interest as a mortgage holder, the trial court acknowledged WCM's interests might be impaired by appellees' demolition motion. However, the trial court found WCM was served with the motion and that the trial court had previously journalized an entry directing that all interested lienholders be notified of the date and time of evidentiary hearings on the motion. WCM filed a memorandum contra to the motion and submitted evidence and arguments at the June 2012 evidentiary hearing. Therefore, to the extent the trial court had received briefs and heard arguments

on the motion, WCM had received notice and an opportunity to be heard. Accordingly, the trial court found WCM had other ways to protect its interests apart from becoming a party-defendant. *See Fairview Gen. Hosp. v. Fletcher*, 69 Ohio App.3d 827, 834 (10th Dist.1990) (affirming denial of a motion to intervene, in part, because applicant had other ways to protect its interests aside from intervention).

{¶ 43} On appeal, WCM does not refute the fact that it had notice and an opportunity to be heard at the June 2012 hearing. Instead, WCM contends it was "clearly treated as a party-defendant at this hearing." (Appellant's Brief, 21.) However, WCM did not file a transcript from the June 2012 hearing to support this contention. In any event, WCM does not contest the trial court's finding that even interested lienholders were to be notified of hearings on the motion for demolition. Thus, regardless of whether the trial court viewed WCM as a party-defendant or interested lienholder, WCM was entitled to notice of the hearing.

{¶ 44} Next, WCM takes issue with the trial court's finding that WCM failed to demonstrate its interest in the common areas of Woodcliff were not adequately represented by an existing party, i.e., the current receiver, Froehlich. "[A]n applicant for intervention has the burden of showing that representation by existing parties is inadequate." *Duryee v. PIE Mut. Ins. Co.*, 10th Dist. No. 98AP-535 (Dec. 1, 1998). The trial court found Froehlich was charged by law with protecting the interests of WCUOA, and WCUOA administered and controlled common areas of Woodcliff on behalf of the unit owners, who owned those areas as tenants in common.

{¶ 45} WCM contends its interests differ from Froehlich because, for instance, Froehlich has considered encumbering Woodcliff units with mortgages that would take priority over those of WCM. Even if we agreed that WCM and Froehlich had divergent interests, as explained above, WCM failed to satisfy the other requirements for intervention under Civ.R. 24. Thus, Woodcliff would still not be entitled to intervene in the nuisance action.

{¶ 46} In its reply brief, WCM makes several contentions about motions appellees have made in separate cases involving Woodcliff units. WCM asserts that if these motions are granted, it would become a party-defendant in the nuisance action. Therefore, WCM claims appellees' position in the present appeal contradicts their actions in other

litigation.   However, we will not consider arguments made for the first time in a reply brief.  *Huffer v. Brown*, 10th Dist. No. 12AP-1086, 2013-Ohio-4384, ¶ 10.

{¶ 47}  For the foregoing reasons, we overrule the third assignment of error.

## IV.  CONCLUSION

{¶ 48}  Having overruled all three of the assigned errors, we affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

SADLER, P.J., and TYACK, J., concur.

———————————